UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PEERLESS INDEMNITY ) <br> INSURANCE COMPANY, ) <br> ) <br>               Plaintiff, ) <br> v. ) <br> ) <br> FOOD SERVICE SPECIALISTS, INC., ) <br> 831 N. Martway Drive ) <br> Olathe, KS 66061 ) <br> ) <br> and ) <br> ) <br> DAN MCCULLOUGH, ) <br> 1250 SW Arbor Park Drive ) <br> Lee's Summit, MO 64082, ) <br> ) <br>              Defendants. ) | Case No. 15-2326 |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Peerless Indemnity Insurance Company, pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, and for its Complaint for Declaratory Judgment, states:

**PARTIES**

1. At all times relevant herein, Plaintiff Peerless Indemnity Insurance Company ("Peerless") was a foreign insurance company organized and existing under the laws of the State of Illinois, with its principal place of business at 175 Berkley Street, Boston, Massachusetts. Peerless is a citizen of Illinois and Massachusetts and not a citizen of Kansas or Missouri.

2. At all times relevant herein, Defendant Food Service Specialists, Inc. ("Food Service") was a corporation organized under the laws of the State of Kansas, with its principal place of business at 831 N. Martway Drive, Olathe, KS 66061. Food Service is a citizen of Kansas alone and not a citizen of Illinois, Massachusetts, or Missouri.

1

3. Defendant Dan McCullough ("McCullough") is an individual, who resides at 1250 SW Arbor Park Drive, Lee's Summit, MO 64082. McCullough is a citizen of Missouri alone and not a citizen of Illinois, Massachusetts, or Kansas.

4. This action seeks a declaratory judgment relating to: (a) the extent, if any, of insurance coverage available to Food Service in regards to a breach of contract claim asserted by McCullough against Food Service; (b) whether Peerless had a duty to defend Food Service in connection with McCullough's breach of contract claim against Food Service; and (c) whether Peerless is required to indemnify Food Service in connection with a Judgment entered against Food Service on January 8, 2015 by the Circuit Court of Jackson County in Case No. 1416-CV06842.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy is greater than Seventy-Five Thousand Dollars ($75,000).

6. McCullough, by and through his employment with Food Service – a Kansas company – has sufficient "minimum contacts" with the State of Kansas to submit him to the jurisdiction of this Court.

7. Venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391(b)(2) and/or 28 U.S.C. § 1391(b)(3).

## THE INSURANCE POLICY

8. Peerless issued a policy of insurance, Policy No. CBP8546580 (hereinafter "the Policy"), with coverages for Commercial General Liability and Employee Benefits Liability to Food Service with effective dates of November 16, 2009 through November 16, 2010. The Policy provides limits of liability of $1,000,000.00 per employee. (Policy, a true and correct certified copy of which is attached hereto as Exhibit "A" and incorporated herein by reference.)

## THE CLAIM

9. This case arises out of a contract dispute between McCullough and his former employer, Food Service.

10. On March 21, 2014, McCullough filed a Petition ("Petition") in the Circuit Court of Jackson County, Missouri, Case No. 1416-CV06842, alleging that, on December 30, 2008, McCullough and Food Service entered into a Management Plan that provided, *inter alia*: (1) McCullough would receive a cash value put into a special trust managed by Food Service over a period of 5 years; and (2) after 5 years, the plan restrictions would be lifted and McCullough could use the cash value to purchase stock in Food Service. (Petition, a true and correct copy of which is attached hereto as Exhibit "B" and incorporated herein by reference, at ¶¶ 5-7.)

11. McCullough further alleged that, pursuant to the terms of the Management Plan, "[i]n any of years 1 through 5 [of McCullough's employment], [Food Service] or substantially all of [Food Service's] assets are sold to, merged with or consolidated with another entity, then the Account shall immediately vest 100% in [McCullough], effective the date of the sale, merger or consolidation." (Exhibit B, at ¶ 9.)

12. McCullough alleged that in 2010 Food Service merged with Roisum Elite Sales & Marketing to form Elite Foodservice Specialists, LLC, and that on August 1, 2013, Elite

3

Foodservice Specialists, LLC was acquired by Key Impact Sales & Systems, Inc. (Exhibit B, at ¶¶ 10-12.)

13. McCullough further alleged that, after the 2010 merger, he made a demand on Food Service for the full cash value of his interests pursuant to the terms of the Management Plan. (Exhibit B, at ¶¶ 13, 19.)

14. McCullough alleged that Food Service refused to pay him the monies owed. (Exhibit B, at ¶ 20.)

15. McCullough alleged that this failure to pay monies constituted a breach of the Management Plan – a contract that embodied the parties' agreement. (Exhibit B, at ¶ 21.)

16. On March 26, 2014, Food Service submitted a "General Liability Notice of Occurrence/Claim" to Peerless, thereby notifying Peerless of the "breach of contract" claim asserted by McCullough in the Circuit Court of Jackson County, Missouri. (General Liability Notice of Occurrence/Claim, a true and correct copy of which is attached hereto as Exhibit "C" and incorporated herein by reference.)

17. On May 9, 2014, Peerless timely denied coverage for McCullough's breach of contract claim, and expressly notified Food Service that Peerless would not participate in the defense of Food Service in the Circuit Court action or pay any settlements or judgments on Food Service's behalf. (*See* May 9, 2014 letter from Marianna Salewski of Peerless Indemnity to Mr. Peine of Food Service Specialists, Inc., a true and correct copy of which is attached hereto as Exhibit "D" and incorporated herein by reference.)

18. In support of its denial of coverage and defense, Peerless cited to pertinent language contained in the Policy, including without limitation, the following provisions:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

2. **Exclusions**
   This insurance does not apply to:

   b. **Contractual Liability**
   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

            ***

**SECTION V – DEFINITIONS**

17. **"Property damage" means:**

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

                    ***

**ENDORSEMENT – EMPLOYEE BENEFITS LIABILITY COVERAGE**

This endorsement modifies insurance under the COMMERCIAL GENERAL LIABILITY COVERAGE PART.

A. The following is added to **Section I – Coverages:**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

   b. This insurance applies to damages only if:

      **(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

      **(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

      **(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph c. below, during the policy period or an Extended Reporting Period we provide under Paragraph G. of this endorsement.

2. **Exclusions**
   This insurance does not apply to:

   b. **Bodily Injury, Property Damage, or Personal and Advertising Injury**
      "Bodily injury", "property damage" or "personal and advertising injury".

   h. **Available Benefits**
      Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**H.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

1. "Administration" means:

   a. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

6

> **b.** Handling records in connection with the "employee benefit program"; or
>
> **c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

**3.** "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

**4.** "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

> **b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;
>
> **e.** Any other similar benefits designated in the Schedule or added thereto by endorsement.

*** 

(*See* Exhibit D, at pp. 5-9; *and see* Exhibit A.)

19. On January 8, 2015, an uncontested "trial" was conducted in the action pending in the Circuit Court of Jackson County, wherein – after hearing evidence submitted by McCullough alone – the Circuit Court stated as follows:

> Having reviewed the evidence in the case I find, therefore, that the defendant is liable to the plaintiff on his claim for **breach of contract** and the Judgment will be entered against the defendant and in favor of plaintiff, Dan McCullough on the <u>**sole count of the petition in the case, that being breach of contract**</u>. I also find based on the evidence before me that the damages sustained as a direct and proximate result of defendant's **breach of the agreement** are in the amount of…$1,180,500 and I'm entering a Judgment in favor of the plaintiff and against the defendant in that amount to the form Judgment that I've been provided with that I've reviewed and I find in accordance with and supported by the evidence in the case.

7

(*See* Transcript, a true and correct copy of which is attached hereto as Exhibit "E" and incorporated herein by reference, p. 18) (emphasis supplied).

20. On January 8, 2015, the Court signed the proposed Judgment submitted by McCullough. However, the Judgment was not consistent with the evidence presented at the hearing in that it stated: "[t]he Court finds that all damages arise from Food Service Specialists, Inc.'s **errors in administration of the employee benefit program**." (*See* Judgment, a true and correct copy of which is attached hereto as Exhibit "F" and incorporated herein by reference, at p. 2) (emphasis supplied).

21. On January 14, 2015, McCullough, by and through his counsel, sent correspondence to Peerless, notifying Peerless of the $1,180,500.00 judgment and McCullough's intention "to move forward with collection efforts on the judgment and potentially a bad faith claim on behalf of your insured." (*See* January 14, 2015 letter from David A. Schatz to Marianna Salewski of Peerless, a true and correct copy of which is attached hereto as Exhibit "G" and incorporated herein by reference.)

22. McCullough's inclusion of the language "all damages arise from Food Service Specialists, Inc.'s **errors in administration of the employee benefit program**" in the proposed Judgment that he submitted to the Circuit Court was plainly an attempt to trigger coverage under the Policy – coverage that does not exist for a straight breach of contract claim (which was, as the Circuit Court recognized on the record, McCullough's sole cause of action asserted against Food Service in the Circuit Court lawsuit).

23. Furthermore, the language "all damages arise from Food Service Specialists, Inc.'s **errors in administration of the employee benefit program"** is inconsistent with the evidence

presented at the January 8, 2015 "trial" and with the Circuit Court's express findings announced from the bench.

24. None of the endorsements attached to the Policy include or provide coverage for breach of contract claims.

25. Peerless denies that the Policy provides coverage for McCullough's breach of contract claim and/or imposes a duty to defend Food Services in regards to any breach of contract claim asserted by McCullough.

26. Peerless further denies that the Policy requires Peerless to indemnify Food Service in connection with the Judgment entered by the Circuit Court of Jackson County, Missouri in Case No. 1416-CV06842.

27. Peerless brings this action seeking the Court's interpretation of the Policy and a declaration of Peerless' rights and obligations with respect to McCullough's claim and Judgment.

28. An actual justifiable controversy exists between Peerless and Defendants Food Service and McCullough.  Resolution of the matters raised in this action will dispose of coverage issues related to the Policy.

29. All necessary and proper parties are before the Court for the matters in controversy.

30. Peerless has no other adequate remedy at law other than the claims set forth herein.

WHEREFORE, Plaintiff Peerless Indemnity Insurance Company respectfully requests this Court enter judgment in its favor and against Defendants Food Service Specialists, LLC and Dan McCullough declaring the following:

    a. That the Policy does not provide coverage for McCullough's breach of contract claim;

b. That Peerless had no duty to defend Food Service in the action brought by McCullough against Food Services in the Circuit Court of Jackson County, Case No. 1416-CV06842;

c. That Peerless has no obligation to indemnify Food Service in connection with the Judgment entered by the Circuit Court of Jackson County in Case No. 1416-CV06842 on January 8, 2015; and

d. For such further relief as this Court deems just and proper.

Respectfully submitted,

**SEYFERTH BLUMENTHAL & HARRIS LLC**

*/s/ Bruce A. Moothart*_____
Bruce A. Moothart, KS Bar # 17263
Kevin J. Karpin, KS Bar # 16947
Peter K. Andreone, KS Bar # 24053
4801 Main Street, Suite 310
Kansas City, Missouri 64112
(816) 756-0700 (Telephone)
(816) 756-3700 (Facsimile)
bruce@sbhlaw.com
kevin@sbhlaw.com
peter@sbhlaw.com

*Attorneys for Plaintiff*
*Peerless Indemnity Insurance Company*